IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 7 |
| | : |
| PATRICK EDWARD MANSFIELD | : |
| | : |
| DEBTOR. | : BANKRUPTCY NO. 08-11648 SR |
| | : |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

**Introduction**.

The instant matter presents a deceptively simple question: whether a Chapter 7 Debtor's attorney who is party to a "flat fee" prepetition retention agreement may pursue the postpetition collection of any unpaid portion of the fee. The Court concludes that counsel may not do so because any unpaid portion of such a fee is a prepetition debt, subject to discharge and, hence, unrecoverable.

The relevant facts are not in dispute. Prior to filing the above-captioned bankruptcy case the debtor, Patrick Edward Mansfield ("Debtor"), entered into a retention agreement ("Agreement") with his counsel, John Murphy. It obligated Murphy to provide legal services (some to be rendered prepetition and others to be rendered postpetition) in connection with a Chapter 7 bankruptcy case for a flat fee of $1,601,[1] plus $299 for the filing fee and $100 for the

---

[1] For the flat fee of $1601, Mr. Murphy agreed to provide the following services:

> a. File the initial chapter 7 petition, the statement of executory contracts, the schedule of assets and liabilities, the statement of financial affairs, the schedule of income and expenses and the schedule of debtor's intentions.
>
> b. Attend the first scheduled meeting of creditors.

(continued...)

education fee, for a total amount of $2,000.[2]  *See* Chapter 7 Representation Agreement, Docket Entry No.18.[3]  The Agreement required the Debtor to pay the aforementioned $2,000 fee by:

>    (i) paying $1,000 to Mr. Murphy up-front (i.e., before Mr. Murphy
>    started representing the Debtor); and
>
>    (ii) paying $1,000 to Mr. Murphy in four monthly installments of
>    $250 each beginning on March 21, 2008, (i.e., *after* the Debtor
>    filed his Chapter 7 bankruptcy case).

*Id.*  The United States Trustee ("UST") filed a Motion for Review and Disgorgement of Attorney Compensation Pursuant to 11 U.S.C. § 329 ("Motion") contending that, since the Agreement was executed prepetition, Mr. Murphy is not entitled to collect any postpetition payments from the Debtor because his monetary obligations under the Agreement constitute a dischargeable debt. The UST asserts that not only should Mr. Murphy be prohibited from collecting any portion of

---

[1](...continued)
>    c. Respond by telephone to telephone inquiries from creditors to verify
>    that a bankruptcy has been filed or will be filed by a date certain.
>
>    d. Discuss with the Client during up to five telephone calls or files
>    emails for a total of five communications from the Client, with questions
>    about creditors and the status of the case.
>
>    e. Mr. Murphy will mail a carbon copy to the Client of the initial filing
>    and the address list of creditors when it is forwarded to the court for
>    filing. It is the responsibility of the Client to ensure that all creditors are
>    listed properly listed on the list of addresses. Your responsibility is to
>    notify Mr. Murphy within five business days of the need to add any
>    creditors. The claims of creditors not properly listed on the mailing list
>    will not be discharged ore eliminated by the bankruptcy.

*See* Chapter 7 Representation Agreement ¶2.

[2] Pursuant to the terms of the Agreement, any additional services that were not included in the flat fee were to be billed separately if performed. *See* Chapter 7 Representation Agreement at ¶4. No one asserts that Mr. Murphy performed any additional services for the Debtor.

[3] The Court takes judicial notice of the dockets from Debtor's case and of their contents. Fed.R.Evid. 201; *see Maritime Electric Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n.3 (3d Cir. 1991).

his fee postpetition, but that he should also be required to disgorge any fees which he received postpetition. Mr. Murphy opposes the UST, contending that: (1) there is no authority in the Eastern District of Pennsylvania supporting the UST's position; and (2) he is entitled to collect the remaining $1,000 owed by Debtor on a *quantum meriut* basis.

As previously noted, the Court concludes that a debtor's obligation under a fee agreement to pay a fixed or flat fee to his attorney for legal services rendered pre- and post- petition in a Chapter 7 case, regardless of how the fee is scheduled to be paid, is a prepetition debt that is dischargeable under 11 U.S.C. § 727(b). Nevertheless, since there was, to date, no authority in this district on point with the UST's position in this matter, Mr. Murphy will not be required to disgorge any of the fee which he collected in this bankruptcy case, or in any pending bankruptcy case in which he has heretofore entered into a similar fee agreement (and for which he has properly filed a Rule 2016(b) Statement) involving a flat or fixed fee for his legal representation of the debtor.[4] Mr. Murphy will, however, be required to comply with the terms of the Court's ruling going forward.

**Background**.

On February 14, 2008, the Debtor and Mr. Murphy executed the Agreement. *See* Agreement at 3. As noted above, the Agreement obligated the Debtor to pay a flat fee of $2,000 for Mr. Murphy's services by paying a lump sum of $1,000 prepetition and four monthly payments of $250 postpetition. *Id.*

On March 11, 2008, the Debtor filed his Chapter 7 case. *See* Docket Entry #1. On the

---

[4] This ruling, of course, applies only to cases pending before the undersigned judge as of the date of this Opinion.

same date, counsel filed his Statement Pursuant to Rule 2016(b) (the "Statement"), stating that he agreed to accept $2,000 for legal services, including $299 for the filing fee. *See* Statement Pursuant to Rule 2001(b), Docket Entry # 1. The Statement reflects: (i) that Mr. Murphy received a prepetition payment from the Debtor of $1000, leaving a postpetition balance of $1,000; and (ii) that the fixed fee of $2,000 only covers certain legal services with regard to the Debtor's Chapter 7 case while excluding others. *Id.*

According to Mr. Murphy, he expended 5.7 hours of time performing postpetition legal services for the debtor.[5] *See* Brief of John Francis Murphy, Esq. In Opposition to the Motion of the United States Trustee Regarding Attorneys' Fees at 1 & Exhibit B (Mr. Murphy's time records time records setting forth the dates and amount of time expended for the services performed on behalf of the Debtor). Calculated at his billable hourly rate of $300 per hour, the dollar value of his postpetition services is $1,710. *Id.*

On March 26, 2008, the UST filed the present Motion. Docket Entry # 4. Mr. Murphy filed his response to the Motion on April 8, 2008. Docket Entry # 17. A hearing on the Motion was held on April 24, 2008. Thereafter, Mr. Murphy filed a brief in opposition to the Motion and the UST filed a response. *See* Docket Entry # 19 & # 20. On August 18, 2008, Mr. Murphy filed a supplement to his brief advising the Court that the Debtor had "paid off his bill" by

---

[5] According to Mr. Murphy's time records, he spent exactly 4.0 hours in traveling time and attendance at the § 341 meeting of creditors. The Court surmises that this time entry is the average amount of time that Mr. Murphy spends for a § 341 meeting and not the exact amount of time that he spent on the § 341 meeting in this case. Indeed, his answer to the UST.'s motion states that "[t]he time to attend the meeting of creditors in Philadelphia, including travel time and waiting time is about four hours." Answer of John Francis Murphy, Esq. To Motion of United States Trustee Regarding Attorneys' Fees at ¶6. The court observes in passing that time records, when services are recorded on an hourly rate basis, should be based on the specific amount of time required to perform the task in a particular case and not on an average amount of time which the task takes.

4

making his last postpetition payment on July 2, 2008. *See* Docket Entry # 24 & Supplement to Brief of John Francis Murphy, Esq. in Opposition to the Motion of the United States Trustee Regarding Attorneys' Fee at 1. Mr. Murphy, therefore, collected $1,000 from Debtor in postpetition installments which is consistent with the terms of the Agreement. By Order dated August 5, 2008, Debtor was granted a discharge under 11 U.S.C. § 727.

**Discussion**.

**Whether a Debtor's Obligation under a Fee
Agreement to Make Postpetition Payments
Towards a Flat Fee Charged for Both
Prepetition and Postpetition Legal Services
Is a Dischargeable Debt under 11 U.S.C. §727(b)**

*Pertinent Provisions from the Bankruptcy Code and Rules*

Bankruptcy Code §329(a) obligates a debtor's attorney, to "file with the court a statement of compensation paid or agreed to be paid" for legal services rendered or to be rendered by such attorney. 11 U.S.C. §329(a). Rule 2016 of the Federal Rules of Bankruptcy Procedure requires every debtor's attorney to file the statement required by §329(a) within fifteen days after the order for relief. Fed.R.Bankr.P. 2016(b). The disclosures required by §329(a) and Rule 2016 are reported on Official Form B 203. This form requires debtor's counsel to list the amount agreed to for legal services, the amount received prior to filing Form B 203, and the balance due. It also requires counsel to list the services which he has agreed to render in return for his fee and the services which the fee will not cover. Notably, the form does not require counsel to list any additional fee(s) which the debtor will be required to pay for additional services not covered by the fee stated on the form. For this reason, it is many times impossible for a Court to ascertain the total fee which an attorney is charging to represent a client in a Chapter 7 case. Generally,

the UST will ask further questions of any Chapter 7 attorney who the UST is concerned is overcharging a client, and may bring such cases to the Court's attention. Pursuant to § 329(a), the bankruptcy court may cancel any fee agreement or order the return of any payment when an attorney's fee "exceeds the reasonable value of any such services[.]" 11 U.S.C. § 329(b).

The relevant discharge provision is §727(b), which discharges a debtor from "all debts that arose before the date of the order for relief" unless such debt is excepted under § 523. 11 U.S.C. §§ 523 & 727(b). There is no exception listed under §523 for a debt for attorneys' fees incurred in a Chapter 7 case. *See* 11 U.S.C. §523.

### *Application of Bankruptcy Code §§ 727, 523 and 329 and Bankruptcy Rule 2016*

Most courts applying the aforementioned statutory provisions and Rule 2016 generally agree that debts *solely* for prepetition legal services are dischargeable under 11 U.S.C. § 727(b). *See Rittenhouse v. Eisen*, 404 F.3d 395 (6th Cir. 2005) (opining that a debt for prepetition legal services is discharged under §727(b)); *Fickling v. Flower, Medalie & Markowitz*, 361 F.3d 172, 176-77 (2nd Cir. 2004) (holding that attorney's fees and expenses incurred by a debtor's attorney after the filing of a Chapter 11 petition but before the conversion of the Chapter 11 case to a Chapter 7 case are discharged under §727);[6] *Hessinger and Asociates v. U.S. Trustee (In re Biggar)*, 110 F.3d 685 (9th Cir. 1997) (ruling that "an installment contract for pre-petition legal services, which calls for all fee payments to be made postpetition" is dischargeable under §727);

---

[6] Of note, the *Rittenhouse* and *Fickling* Courts each respectively, stated that postpetition attorneys' fees are nondichargeable. *See Fickling v. Flower, Medalie & Markowitz, Esqs. (In re Fickling)*, 361 F.3d at 176 (reasoning that 11 U.S.C. § 329 "covers not just pre-petition attorneys' fees, but also post-petition attorneys' fees, which are not dischargeable, under Chapter 7."); *Rittenhouse v. Eisen*, 404 F.3d at 397 (observing that 11 U.S.C. §329 "also covers post-petition attorney fees, which are not dischargeable.").

*but see In re Perry*, 225 B.R. 497 (Bankr. D. Colo. 1998) (ruling that "a reasonable fee for legal services, properly disclosed pursuant to Section 329(a) and Bankruptcy Rule 2016(b), regardless of whether the services are performed prepetition or postpetition, is not subject to discharge under Section 727(b) if unpaid upon the filing of the bankruptcy petition."); *In re Mills*, 170 B.R. 404, 410-12 (Bankr. D. Ariz. 1994) (opining that §727(b) does not discharge an individual debtor's obligation to make postpetition installment payments towards a fixed or flat fee for prepetition legal services rendered pursuant to a prepetition fee agreement).[7]

Correspondingly, other courts have emphasized that, since attorneys' fees are not among the debts excepted from discharge under §523, prepetition debts for legal fees, particularly flat fee arrangements, covering both prepetition and postpetition legal services, are dischargeable under §727(b). *See Bethea v. Robert J. Adams & Associates*, 352 F.3d 1125 (7th Cir. 2003) (ruling that a debtor's obligation to pay a flat fee retainer in installments, some of which were due prepetition and others thereafter, for legal services entailed in preparing and prosecuting his or her bankruptcy case, is dischargeable under §727); *Hessinger Associates v. Voglio (In re*

---

[7] The bankruptcy courts in *In re Perry* and *In re Mills* based their holdings on the view that Congress could not have intended to render postpetition installment payments for legal fees unenforceable under §727(b), since §329 and Rule 2016 require disclosure of the "compensation paid or agreed to be paid" by debtor to his or her counsel. The bankruptcy court in *In re Perry* reasoned that "Congress, by enacting Section 329 and adopting Rules 2016 and 2017, clearly contemplated the existence of fees 'agreed to be paid ... for services rendered or to be rendered' in contemplation of and in connection with a bankruptcy case." 225 B.R. at 500. Similarly, the bankruptcy court in *In re Mills* reasoned that since §329(a) requires disclosure both of payments already made and any agreement for payments to be made, and as §329(b) provides a remedy if the disclosures pursuant to §329(a) reveal an unreasonable payment already made or to be made, it "doesn't make sense to apply the meat cleaver of Section 727(b) to such agreements when the scalpel of Section 329(b) was designed for that purpose." 170 B.R. at 411-12. Mr. Murphy encourages this Court to adopt this interpretation of §329, Rule 2016 and §723(b). However, this Court agrees with the majority viewpoint that §329 does not conflict with the discharge provision contained in §727(b) since it does not render §329 meaningless. *See Rittenhouse v. Eisen,* 404 F.3d at 396-97; *Fickling v. Flower, Medalie & Markowitz (In re Fickling),* 361 F.3d at 175-77; *Bethea v. Robert J. Adams & Associates*, 352 F.3d at 1126-27; *Hessinger Associates v. Voglio (In re Voglio)*, 191 B.R. at 421-24.

7

*Voglio)*, 191 B.R. 420 (D. Ariz. 1996) (debt arising from prepetition agreement requiring debtors to pay a flat fee for legal services by making postpetition monthly installments constitutes a dischargeable debt); *McTyeire v. Hunt (In re McTyeire)*, 357 B.R. 898 (Bankr. M.D. Ga. 2006) (a debt arising from prepetition agreement for legal services which obligated debtors to pay flat fee of $950 plus additional amount for each creditor over 15 creditors and $180 per hour for legal services exceeding 7.6 hours of time was dischargeable debt); *In re Shell*, 312 B.R. 431 (Bankr. M.D. Ala. 2004) (a flat fee retainer of $900 which was to be paid in installments by post-dated checks constituted a prepetition debt subject to discharge under §727(b)); *In re Griffin,* 313 B.R. 757 (Bankr. N.D. Ill. 2004) (debtors' obligation pursuant to prepetition contract to pay their bankruptcy counsel a flat fee in installment payments and other fees for additional services was a prepetition claim against the estate subject to the automatic stay and a dischargeable debt); *In re Fischer*, 2004 WL 555407, at *1 (Bankr. C.D. Ill. March 17, 2004) (reasoning that when a prepetition fee agreement requires a debtor to pay a flat fee for all legal services, whether rendered pre- or post- petition, "[a]ny portion of a flat fee not paid prepetition is uncollectible during the case because of the automatic stay and becomes permanently uncollectible upon entry of the discharge order, absent a court-approved reaffirmation agreement."); *In re Symes*, 174 B.R. 114 (Bankr. D. Ariz. 1994) ("[R]etention agreements, that require clients pre-petition to execute post-dated checks to be cashed post-petition, or that require execution of a pre-petition promissory note to be collected post-petition, constitute a dischargeable claim subject to the automatic stay.").

The above precedents notwithstanding, Mr. Murphy requests this Court to adopt an alternative school of thought articulated by the Court of Appeals for the Ninth Circuit in *Gordon*

*v. Hines*, 147 F.3d 1185 (9th Cir. 1998).

### *Gordon v. Hines*

In *Hines*, the debtor agreed to pay her attorney, Robert Gordon ("Gordon"), a flat fee of $875 for preparing and filing her Chapter 7 petition and "all of the work to be entailed in handling the bankruptcy proceedings thereafter." *Id.* at 1188-89. Because the debtor was unable to pay the $875 in advance, the debtor and Gordon entered into a written fee agreement which permitted the debtor to pay the $875 by making seven monthly installment payments of $125 each, supported by a promissory note and seven postdated checks, "the first to be cashed prepetition and the remainder to be cashed postpetition." *Id.* at 1187. Pursuant to the terms of the agreement, Gordon cashed one check prepetition and two checks postpetition for a total of $375. At that point, the debtor discharged Gordon and hired another attorney who advised the debtor to stop payment on the post-dated checks, which she did. In response to the stop payment order, Gordon's law firm sent the debtor a "past due" notice and left her a message on her answering machine. When the debtor returned the call, she was allegedly "ordered to settle her account by the end of the month." *Id.* at 1187. In response, the debtor filed a motion for contempt against Gordon for violating the automatic stay. *Id.* at 1188. The bankruptcy court denied the debtor's motion for contempt but reduced Gordon's fee from $875 to the $375 already paid. *Id.* The debtor appealed to the Bankruptcy Appellate Panel ("BAP"), which reversed the bankruptcy court's order and remanded the matter for a determination of damages against Gordon for violating the automatic stay. *Id.* Gordon appealed to the Ninth Circuit.

The Ninth Circuit began its inquiry by noting that Gordon was not seeking to recover fees for prepetition legal services since he had already collected $375 which covered all of his

9

prepetition work and possibly some of his postpetition work. *Id.* Observing that since the $875 flat fee covered not only Gordon's work in preparing and filing the debtor's Chapter 7 petition, but also the work involved in handling the bankruptcy proceedings, the Ninth Circuit opined that the issue before it was *not* whether a debt arising from the provision of prepetition legal services is dischargeable but, *instead*, whether an attorney is entitled to collect fees for postpetition legal services bargained for pursuant to a prefiling fee agreement. *Id.* The Ninth Circuit observed that when an attorney enters into the type of prefiling fee agreement at issue before it, namely where the attorney receives a "minimal advance payment plus an agreement that the debtor will pay the attorney for work done in the bankruptcy case from the debtor's post-bankruptcy earnings[,]" the arrangement provides potential problems for recovery as exemplified by the case at issue before it where the BAP held that "such an arrangement gives the attorney a prepetition claim for" post-petition legal services, "a claim that is discharged by the debtor's act of filing for Chapter 7 protection." *Id.* at 1189.

The Ninth Circuit then considered various possible tactics a debtor's attorney might employ to avoid what it dubbed a "compensation quandry." *Id.* at 1189-90. The proposed solutions included: (i) initially contracting only to provide prepetition services and entering into a separate agreement postpetition to provide any necessary postpetition services; (ii) seeking to have the debtor reaffirm its prepetition fee agreement; and (iii) viewing the agreement to provide postpetition legal services as an executory contract. *Id.* at 1190. The Ninth Circuit concluded that each of the alternative solutions "potentially runs afoul of one Code provision or another." *Id.* "[T]he optimum solution to the problem," the Ninth Circuit stated "call[s] for an action by Congress to provide express statutory authority" for compensating Chapter 7 debtors' attorneys

for postpetition services rendered pursuant to a prepetition contract. *Id*. Since Congress had failed to so act, the Ninth Circuit concluded that a judicial response was necessary to resolve the problem by providing Chapter 7 debtors' attorneys with a "legally enforceable right" to compensation for such postpetition services.[8] *Id.* at 1191. Relying on the "doctrine of necessity," the Ninth Circuit held that claims for attorneys' fees for postpetition legal services do not fall within the automatic stay provisions of Section 362(a)(6) or the discharge provisions of Section 727." *Id.*[9]

In the case before it, the Ninth Circuit reasoned that since Gordon was discharged before he had completed his services for the debtor, he was required to rely upon the theory of quantum merit for recovery.[10] Since the record was unclear as to whether the bankruptcy court had

---

[8] Some courts view the Ninth Circuit's approach as an improper exercise of judicial authority. *See Hessinger & Associates v. Voglio (In re Volgio)*, 191 B.R. 420, 421 & 426 (D. Ariz. 1996) (reasoning that "reading a solution to this potential problem [that debts arising from prepetition agreements for postpetition payments of attorney's fees in a Chapter 7 bankruptcy case constitute dischargeable debts] into the bankruptcy code would be an improper exercise of authority by this court" and that "Congress is the proper body to provide a remedy" for the problem); *In re Shell*, 312 B.R. at 436 ("The Ninth Circuit's reliance upon the 'doctrine of necessity' in *Hines* to circumvent these inconvenient provisions in the Bankruptcy Code was improper.).

[9] The propriety of applying the "doctrine of necessity" in a Chapter 7 context is, at the least, debatable, since the purpose of a Chapter 7 case is liquidation and not reorganization. "The 'doctrine of necessity' stands for the proposition that a bankruptcy court may allow payment outside of a plan of reorganization on account of a prepetition obligation where such payment is critical to the reorganization process." *See In re Enron Corp.*, 2003 WL 1562202, at *20 n.31 (Bankr. S.D.N.Y. March 21, 2003) (*citing In re Financial News Network, Inc.,* 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) (observing that the "doctrine of necessity" which originated in railway cases, "stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization). *See also In re Chandler* 292 B.R. 583, 588 (Bankr. W.D. Mich. 2003) (observing that the "'doctrine of necessity" when applicable "allows payment in a Chapter 11 case under very extraordinary circumstances of a few critical vendors who furnish the debtor with unique and vital supplies so that the debtor can operate and reorganize" ), *aff'd sub nom. Rittenhouse v. Eisen*, 404 F.3d 395 (6th Cir. 2005).

[10] When a client discharges his counsel (except in the case of a contingency fee agreement when the contingency has already occurred), the appropriate cause of action for an attorney seeking to recover
(continued...)

11

determined that $375 was "reasonable compensation" for prepetition <u>and</u> postpetition services, the Ninth Circuit remanded the matter to the bankruptcy court to have that question answered. *Id.* at 1192.

This Court respectfully declines to adopt the Ninth Circuit's rationale for two reasons: (i) it is at odds with the nature of a flat or fixed fee arrangement; and (ii) it is unnecessary to judicially amend the Bankruptcy Code in order to enable Chapter 7 debtors' attorneys to receive compensation for rendering postpetition legal work.

When a client and an attorney agree that the attorney will provide certain services (described by a category, a time period, a case, etc.) for a fixed or flat fee, the fee covers the services regardless of the amount of time which the attorney spends performing the services; both the client and the attorney are obligated to the flat fee whether the attorney would have made more or less for the services by charging for them by the hour or charging separately for each service. *See* Black's Law Dictionary (8th ed. 2004) (defining "fixed fee" as "[a] flat charge for a service; a charge that does not vary with the amount of time or effort required to complete the services."); *In re Fischer*, 2004 WL 555407, at *1 (Bankr. C.D. Ill. 2004) ("With a flat fee, it matters not when the work is performed, since, by definition, a flat fee is a debt that is created upon the execution of the fee agreement and its existence is not linked to the amount or timing of

---

[10](...continued)
reasonable compensation for his work is an action for quantum meruit. *See Elliot, Reihner, Siedzikowski & Egan, P.C. v. The Pennsylvania Employee's Benefit Trust Fund*, 161 F. Supp.2d 413, 422-23 (E.D. Pa. 2001) (when client terminated law firm as counsel, law firm's only recourse against client was "an action in *quantum meruit* to recover the reasonable value of services rendered prior to termination" and not an action for breach of contract), *aff'd,* 29 Fed. Appx. 838, 841 (3d Cir. 2002) (A "dismissed attorney's remedy is a quantum meruit action to recover the value of services rendered."); *Fowkes v. Shoemaker,* 443 Pa. Super. 343, 661 A.2d 877 (1995) (when client terminates counsel with contingency agreement, counsel may seek compensation through action against client based on quantum meriut but not against his successor counsel).

the legal services actually performed."). Consequently, it is inconsistent with the nature of a flat or fixed fee arrangement, regardless of how the fee is paid (*e.g.*, whether the fee is paid in a lump sum, divided into installment payments, etc.) to apportion the fee among the services performed or the time periods within which they were performed. *See Bethea v. Robert J. Adams & Associates*, *supra*, 352 F.3d at 1129 (reasoning that a flat fee retainer agreement cannot be divided by into hourly units without contradicting or re-writing the agreement); *but see In re Nieves*, 246 B.R. 866, 873 (Bankr. E.D. Wis. 2000) (allowing counsel to recover $300 for postpetition work even though counsel agreed to accept a $700 flat fee for his prepetition and postpetition services).

   The Court finds the division of a flat fee arrangement into prepetition and postpetition parts to be conceptually inconsistent and therefore untenable. The Court therefore joins those other courts which hold that when a flat or fixed fee prepetition agreement is at issue, the fee must be paid in full prior to the commencement of the debtor's case or the fee is discharged under §727(b).

   This conclusion, however, need not necessarily preclude Chapter 7 debtors who cannot afford to pay a fixed or flat fee (for both prepetition and postpetition legal services) in full prior to the filing of their bankruptcy cases from obtaining representation. Another route exists by which Chapter 7 attorneys can be compensated for the rendition of postpetition services. The Ninth Circuit explored this "alternative route." Describing the "alternative route," the Ninth Circuit stated as follows:

> Despite the breadth of the definition of "claim" in Section 101(4)(A), it must be recognized that it strains the notion of a viable "claim against the debtor that arose before" the filing of the Chapter 7 petition (Section 362(a)(6), emphasis added) to attach

13

>that label to a lawyer's ability - though agreed upon prepetition - to receive payment of a contracted-for fee only if and when the lawyer performs the postpetition services that create the entitlement to that fee.
>
>As the Supreme Court has described the "claim" concept in *Pennsylvania Dep't. Pub. Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), after having given (*id*. at 558, 110 S.Ct. 2126) special emphasis to the "right to payment" as the key language in the statutory definition of "claim":
>
>The plain meaning of a "right to payment" is nothing more nor less than an enforceable obligation....
>
>In the situation with which we are dealing, where the only way in which "an enforceable obligation"-a "right to payment"-can arise is if the attorney actually renders the postpetition legal services that match up to the debtor's prepetition promise to pay, it strains that statutory language a good deal to characterize the attorney as having violated the Section 362(a)(6) automatic stay by seeking payment once the postpetition services have thereafter been performed. And in that sense Gordon's efforts to collect the fees at issue would not appear to have violated the Section 362(a)(6) automatic stay.

147 F.3d at 1191 (footnote omitted). Although not itself the main predicate for the Court's holding in the *Hines* case, this rationale provides a means for allowing Chapter 7 debtor attorneys to recover fees for postpetition work.

In *Avellino & Bienes v. M. Frenville Co, Inc. (In re Frenville)*, 744 F.2d 332 (3d Cir. 1984), the Third Circuit held that only claims that arose before the filing of a bankruptcy petition are subject to the automatic stay and that the "threshold requirement of a claim" is that there must be a "'right to payment.'" Id. at 335 (citations omittted). Frenville remains the law of the Third Circuit. *Jones v. Chemetron Corporation*, 212 F.3d 199, 206 (3d Cir. 2000).

In *United States Trustee v. First Jersey Securities, Inc. (In re First Jersey Securities,*

14

*Inc.)*, 180 F.3d 504 (3d Cir. 1999), the Third Circuit held that a right to payment for legal services arises when legal services are performed and not when the bill is presented to the client. *Id*. at 510-11 (*citing In re Florence Tanners, Inc.,* 209 B.R. 439, 447 (Bankr. E.D. Mich. 1997); *In re Investment Bankers, Inc.,* 136 B.R. 1008, 1018 (D. Colo. 1989), *aff'd*, 4 F.3d 1556 (10 Cir. 1993)).[11] It follows that an attorney's right to payment for legal services performed postpetition pursuant to a fee agreement which, in some manner, segregates prepetition fees from postpetition fees (as opposed to flat fee agreement pursuant to which an attorney agrees to perform both prepetition and postpetition services for a lump or fixed sum) arises when the postpetition services are performed. *See Gordon v. Hines*, 147 F.3d at 1192 (Tashima, J., concurring) ("[T]he attorney in this case accrued a 'claim' only when he actually provided the post-petition services for which the debtor agreed to pay him; therefore, his 'claim' is not a prepetition claim against the estate but a postpetition claim against the debtor herself."). Viewed thusly, a client's debt for postpetition services is a postpetition debt which is not subject to the automatic stay or the Chapter 7 discharge injunction (unless the work is rendered pursuant to a flat fee agreement as discussed above).[12] The key to recovery for postpetition services, therefore, lies in the terms

---

[11] The Third Circuit's ruling in *First Jersey Securities, Inc.,* was in the context of deciding when an antecedent debt for legal services exists for purposes of §547(b).

[12] See, e.g., *In re Fischer*, where the court held that postpetition legal services which are performed pursuant to a fee agreement providing for an hourly fee accrue postpetition, stating:

> Where the fee agreement is for an hourly fee, the fees accrued from prepetition work may only permissibly be paid prepetition, since the "debt" for hourly fees arises at the time that the work is performed regardless of when the billing statement is sent to the client. Any amount for hourly fees earned, but not paid, prepetition, is subject to discharge, the same as for an unpaid flat fee. An hourly fee for work performed after the filing is a postpetition debt that is not covered by the scope of the discharge under Section 727.

(continued...)

15

of the attorney's fee agreement. The fee agreement must segregate the fee(s) for prepetition work from the fee(s) for postpetition work.  Once again, this distinction is necessary because a fee for prepetition work constitutes a prepetition debt of, or claim against, the estate which is dischargeable, whereas a fee for postpetition work constitutes a postpetition debt of, or claim against, the debtor which is nondischargeable.  *See Varble v. Chase*, 372 B.R. 133, 140-42 (Bankr. S.D.N.Y. 2007) (ruling that attorney who represented the debtor in divorce and child custody proceedings pursuant to a prepetition agreement wherein the debtor agreed to pay $250 per hour for attorney's legal services had a prepetition, dischargeable claim against the estate for legal services provided prepetition and a postpetition, nondischargeable claim against the debtor for legal services provided postpetition); *see* also *In re Griffin*, 313 B.R. 757, 759-763 (Bankr. N.D. Ill. 2004) (where counsel worked .5 hours prepetition and 2.5 hours postpetition on a redemption motion, the elements necessary to create a right of payment under the attorney-client fee agreement which obligated the client to pay a flat fee of $600 for redemptions on vehicles occurred prepetition).

To recapitulate, legal fees which are segregated from prepetition legal fees and incurred for postpetition legal services constitute a postpetition debt and are, therefore, an obligation of the Chapter 7 debtor (as opposed to the estate) which he or she has an obligation to pay out of his or her postpetition earnings or exempt assets.

---

[12](...continued)
2004 WL 555407, at *1.  *See also In re Sydmark*, 2008 WL 2520105, at *12 (June 20, 2008) (ruling that to "the extent their fee agreements call for them to pay for post-petition work at an hourly rate, and those services have been performed, Debtors' counsel may seek payment from Debtors for the reasonable work performed.").

### *Application of this Court's Ruling to the Instant Case*
### *and the UST's request for disgorgement*

Since the fee arrangement between the Debtor and Murphy was based on a flat or fixed fee, the Debtor's obligation to pay the fee was subject to the automatic stay and discharged pursuant to §727(b). By sending bills to the Debtor after he filed for bankruptcy, Mr. Murphy plainly violated the automatic stay.[13] Moreover, as a creditor with a prepetition claim against the Debtor that was subject to the automatic stay, Mr. Murphy had a conflict of interest with the Debtor during his representation of him. Based on this conflict of interest, the UST contends that Mr. Murphy should be required to disgorge all, or at least part, of the fee which he collected from the Debtor. The Court declines to so direct.

Mr. Murphy contends that since there are conflicting views among courts, and no previous caselaw from this district on point, he should not be required to disgorge his fee from the Debtor. The Court is persuaded by this argument. To require Mr. Murphy to disgorge all or part of his fee given the unsettled state of the law when he entered into the Agreement would unfairly penalize him. Consequently, as to any Chapter 7 bankruptcy cases which are currently pending before the undersigned judge, Mr. Murphy will be permitted to recover the full amount

---

[13] Mr. Murphy contests this and states in the supplement to his brief that he "did nothing more than send bills to the debtor for payment on counsel's fee." He stresses that he didn't file a lawsuit or place phone calls to the debtor to collect the money which he was due, as if these facts absolve him from his actions. *See Supplement to Brief of John Francis Murphy, Esq., in Opposition to the Motion of the United States Trustee Regarding Attorneys' Fee* at 2. This is distressing. Mr. Murphy should well know, given that he is an experienced debtor's attorney that sending bills concerning a prepetition debt after a debtor files a bankruptcy case is a fundamental violation of the automatic stay. *See* 11 U.S.C. § 362(a)(6); *see also Weidner v. Alaska Communications Systems Group, Inc. (In re Weidner)*, 384 B.R. 9, 12 (Bankr. D. Alaska 2008) (sending bill to debtor postpetition to recover a prepetition debt constitutes a violation of the automatic stay under §362(a)(6)); *Meis-Nachtrab v. Griffin (In re Meis-Nachtrab)*, 190 B.R. 302, 307 (Bankr. N.D. Ohio 1995) (creditor's repeated postpetition billings for a prepetition debt "plainly represented acts" in violation of the automatic stay under §362(a)(6)).

of his fixed or flat fee compensation from the debtor pursuant to the terms of his representation agreements. However, Mr. Murphy is on notice of this Court's view of the aforementioned issue and he will be expected to conform his conduct accordingly from this date forward.

**Summary**

A Chapter 7 debtor's obligation under a flat or fixed fee agreement with his attorney constitutes a prepetition debt that is dischargeable pursuant to §727(b). In order to recover for postpetition legal services, a Chapter 7 attorney must segregate the fee for prepetition services from the fee for postpetition services. Such was not done in this case, arguably warranting penalty. Nevertheless, as there was unclear guidance on this issue to date, the UST's motion will be denied and counsel will be instructed to abide by the terms of the Court's Order in the future. An Order consistent with this Opinion shall be issued.

By the Court:

*Stephen Raslavich*

Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: October 2, 2008